UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 15-cr-156-pp

v.

DUJUAN CHERRY,

Defendant.

---

**ORDER DENYING DEFENDANT'S LETTER MOTION FOR COMPASSIONATE RELEASE (DKT. NO. 63)**

---

On August 4, 2015, the grand jury issued a two-count indictment charging the defendant with one count of committing a Hobbs Act robbery of a CVS pharmacy and one count of using, carrying and brandishing of a firearm during and in relation to a crime of violence. Dkt. No. 1. The pretrial services office prepared a bond study at the time of the defendant's arrest in August 2015; it reflects that he told the pretrial services office that he was "in good physical health other than having Asthma which requires an Albuterol inhaler." Dkt. No. 2 at 2.

On April 15, 2016, the United States Attorney issued an information that took the place of the August 2015 indictment; it charged the defendant with *seven* counts of Hobbs Act robbery involving seven different pharmacies on different dates, and one count of using, carrying and brandishing a firearm during and in relation to a crime of violence. Dkt. No. 33. On April 7, 2016, the defendant signed a plea agreement admitting to all those offenses. Dkt. No. 34. The gun charge carried a mandatory minimum sentence of seven years in

prison. Id. at ¶7. The court accepted the defendant's guilty plea on April 20, 2016. Dkt. No. 36. Twice after that, the defendant wrote the court, indicating that he wanted to withdraw the guilty plea. Dkt. Nos. 37, 39. The court held hearings on both requests. Dkt. Nos. 38, 43. After several adjournments, the court scheduled the sentencing hearing for June 12, 2018.

During the presentence investigation in the summer of 2016, the defendant told the presentence writer that he was in good health and was not under the care of a doctor; he also reported no significant injuries or prior hospitalizations. Dkt. No. 41 at ¶170. He did not mention asthma or bronchitis.

At sentencing, the government asked the court to impose a sentence within the guideline range—181 to 205 months (fifteen years one month to seventeen years one month). Dkt. No. 59 at 5. The defendant asked the court to impose a sentence of seven years and one day—the mandatory minimum sentence on the gun charge plus a day. Id. The court imposed a below-guidelines sentence of 156 months—eighty-four months (seven years) on the gun charge, and a consecutive seventy-two months (six years) on the seven robbery charges, for a total sentence of thirteen years. Id.; Dkt. No. 60.

On June 9, 2020, the court received a letter from the defendant, asking for compassionate release. Dkt. No. 63. The defendant stated that he knew that there were certain requirements for a compassionate release motion, but that he didn't know what those requirements were and that he had not been able to get in touch with his lawyer. Id. at 1. The defendant said that he had diagnoses of asthma and bronchitis. Id. at t2. He indicated that he was diagnosed as a toddler, had battled the conditions for as long as he could remember and was still battling them. Id. The defendant explained that if released, he planned to

live with his grandparents on North 21st Street in Milwaukee. Id. at 2-3. He also provided the court with contact information for two of his aunts, whom he said would also be more than willing to let him live with them if released. Id. at 3-4. He closed by indicating that if released, he would have better access to medical attention for his asthma and bronchitis and a head start on his path to greatness. Id. at 4.

On June 10, 2020, the court referred the defendant's letter motion to Federal Defender Services of Wisconsin and asked them to consider filing a more detailed motion on the defendant's behalf. DKt. No. 64. On June 11, 2020, the court received a letter from Federal Defender Services, indicating that they were not able to assist the defendant but giving no opinion about whether the defendant's motion had merit. Dkt. No. 65.

The court also asked probation and the government to weigh in on the defendant's motion. Dkt. No. 66. Probation reports that the defendant is in custody at FCI Pekin. Dkt. No. 67 at 1. Probation says that the Bureau of Prisons has no record of the defendant having any diagnosis for asthma or bronchitis; during his time in prison, he has been treated for a tooth extraction. Id. Probation also reports that the defendant has not asked the warden of FCI Pekin for compassionate release. Id. Probation told the court BOP records show that the defendant has two disciplinary violations from 2019—one for fighting with another person and one for refusing to obey an order. Id. at 2. The records show that the defendant has not completed any programming while in prison, although probation indicates that he is on a

waiting list for six classes. Id. Finally, probation indicates that the defendant's projected release date is September 27, 2026 and his home detention eligibility date is March 27, 2026. Id.

The government opposes the defendant's motion. Dkt. No. 68. It notes that, unlike most of the sentenced defendants who have filed compassionate release motions in the last four months, the defendant makes no reference to the COVID-19 virus. Id. at 2. Next, the government argues that the defendant has not exhausted his administrative remedies as required by the compassionate release statute, 18 U.S.C. §3582(C)(1). Id. at 4-8. The government argues that even if the defendant had exhausted his remedies as the law requires, he has not demonstrated the "extraordinary and compelling circumstances" justifying a sentence reduction under the First Step Act. Id. at 8-11. The government also argues that the seriousness of the defendant's crimes—his participation in a series of armed robberies of pharmacies—mitigates against release. Id. at 11-13. Finally, the government argues that if, somehow, the defendant intended to ask the court to order the Bureau of Prisons to release him to home confinement, the court does not have the authority to grant that request. Id. at 13.

The government is correct that if the defendant is asking the court to order the Bureau of Prisons to allow him to serve the rest of his sentence on home confinement, the court does not have the authority grant that request. Section 12003 of the CARES Act applies to the Bureau of Prisons. Section 12003(b)(1)(2) reads:

> HOME CONFINEMENT AUTHORITY.—During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the *Director of the Bureau* may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the *Director* deems appropriate.

CARES Act, Pub. L. 116-136, §12003(b)(1)(2) (emphasis added). "The BOP has the authority to place someone on home confinement, and to decide when to do so." United States v. Menzie, No. 11-cr-63-pp, 2020 WL 1991577, at *3 (E.D. Wis. Apr. 27, 2020) (citing 18 U.S.C. §3624(c)). The statute specifically delegates to the BOP—not the court—the authority to decide whether and when to place a defendant on home confinement.

That leaves the defendant's request to release him from custody, which the court interprets as a motion for a compassionate release sentence reduction under the First Step Act. Generally, a court may not modify a term of imprisonment once it has been imposed. 18 U.S.C. §3582(c). The compassionate release provision of the First Step Act makes an exception to that rule in certain narrow circumstances. It says:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(b);

And that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; . . . .

The first part of the statute—section (c)(1)(A)—says that the Director of the Bureau of Prisons may make a motion to the court, asking for a compassionate release sentence reduction. The BOP has not done that here.

In the alternative, the statute says that the *defendant* may make a motion to the court after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." The government correctly notes that the defendant has not done this. It does not appear that he has asked the warden of FCI Pekin for compassionate release, which he must do before he can file a compassionate release motion with the court. If the warden does not act on the request within thirty days of receiving it, the defendant may then file a motion with the court. Or if the warden denies the request, the defendant may appeal under Program Statement 5050.50 https://www.bop.gov/policy/progstat/5050_050_EN.pdf, or file a motion with the court. But the defendant has done neither of those things, so his motion is not properly before the court.

Even if the defendant had exhausted his remedies as the law requires, the court would not grant his request based on the information in his letter. Section 3852(c)(1)(A)(ii) doesn't apply to the defendant; he is not at least seventy years old (he is twenty-four), has not served at least ten years of his sentence and the BOP has not determined that he is not a danger to the

community. So the only basis for the court to grant his motion would be §3582(c)(1)(A)(i)—if there were "extraordinary and compelling reasons" that warranted a sentence reduction. The application note to U.S.S.G. §1B1.13 defines "extraordinary and compelling" reasons:

> (A) **Medical Condition of the Defendant.**—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples included metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> That substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less.
>
> (C) **Family Circumstances.**—
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an

extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The defendant does not fall into category (A). He does not allege that he suffers from a terminal illness or from any severe illness or impairment that would diminish his ability to care for himself and from which he is not likely to recover. The defendant's sole basis for asking for compassionate release is that he says he has asthma and bronchitis. In the 2015 bond study, the defendant mentioned that he had asthma that required an inhaler. He made no mention of bronchitis at that time. In the presentence report, the defendant did not mention either asthma or bronchitis. The BOP has no record of an asthma or bronchitis diagnosis and the defendant has not been treated for either condition while in BOP custody. Even if the defendant has asthma and bronchitis, he has not demonstrated that either is so severe that they would diminish his ability to care for himself while in custody or that he is not likely to recover from them.

Some defendants who have filed motions for compassionate release over the past four months have argued that they believe their asthma makes them more vulnerable to severe illness if they are infected with the COVID-19 virus. The defendant made no mention of COVID-19 in his motion, but perhaps he assumed that the court would know that his motion was based on his concerns related to COVID-19. The Centers for Disease Control and Prevent indicate that "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. The court has no evidence that the defendant's asthma is moderate to severe. The American Academy of Allergy Asthma & Immunology explains that "[i]t is important to know that currently there is no evidence of increased infection rates in those with asthma," and

says that "although the Centers for Disease Control and Prevention states that patients with moderate-severe asthma could be at greater risk for more severe disease, there are no published data to support this determination at this time." https://www.aaaai.org/conditions-and-treatments/library/asthma-library/covid-asthma.

Given this, even if the defendant has been diagnosed with asthma, the court cannot conclude that he is "suffering from a serious physical or medical condition . . . [t]hat substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he . . . is not expected to recover."

Nor does the defendant fall into category (B). He is twenty-four years old, not sixty-five or older. He is not suffering from age-related deterioration in his health. He does not appear to have served 75% of his sentence.

Nor does the defendant fall into category (C)—as far as the court is aware, the defendant has no children (or he didn't at the time the presentence report was written in the summer of 2016).

That leaves only category (D)—an "extraordinary and compelling reason" other than the ones in (A), (B) or (C). Again, the defendant did not mention COVID-19. But if that is reason for the defendant's motion, the court does not dispute that the virus causes special concern for incarcerated persons. The defendant is in prison, where it is hard—perhaps impossible—to do the things that public health experts are advising people to do to prevent spread of the virus. He likely cannot stay six feet away from other people all the time or wash his hands for twenty seconds at a time many times a day, or have access to hand sanitizer, or wipe down frequently touched surfaces with disinfecting

cleaner. But a review of the BOP web site does not indicate any active cases of COVID-19 at Pekin. https://www.bop.gov/coronavirus.

The government also is correct that the defendant's crimes were extremely serious. While the defendant had no prior criminal history before becoming involved in these offenses, at age twenty-one he committed seven armed robberies of pharmacies that terrified victims and caused tens of thousands of dollars in loss to the pharmacies. The defendant and his co-actors stole potent controlled substances, including opioids, to sell for financial gain. In five of the robberies, the defendant pointed a gun at victims. He has yet to serve even the seven-year mandatory minimum sentence for the one gun count of conviction (having been in federal custody for just under five years—since August 11, 2015) and has not presented any facts or argument to indicate that he is not a danger to the community.

If the defendant's motion *is* based on concerns about COVI-19, that concern alone is not an extraordinary and compelling circumstance justifying compassionate release. If fear of the virus was a basis for granting a sentence reduction for compassionate release, there would no longer be inmates in any jails or prisons. The defendant's understandable fear and stress does not constitute an "extraordinary and compelling circumstance" that would justify the sentence reduction he seeks.

The court **DENIES** the defendant's letter motion for compassionate release. Dkt. No. 63.

Dated in Milwaukee, Wisconsin this 29th day of June, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**